### CHARLES CARTER *vs.* JONAS L. SIBLEY

The *St.* of 1838, *c.* 163, repealed the *St.* of 1836, *c.* 238, so far as the two statutes affected the same class of persons.

TRESPASS for taking and carrying away goods.   Writ dated March 19th 1840.   The parties submitted the case to the decision of the court on the following facts agreed :

" On the 8th day of November 1839, Benjamin Foster jr. of Charlestown, a citizen of the State of Massachusetts, whose debts exceeded $ 500, made and executed an assignment of his property to the plaintiff, and the said Foster took the oath, and the said Carter gave notice as is required by law.   On the 19th and 20th days of November 1839, Benjamin H. Springer, a citizen of the State of Pennsylvania, instituted several suits against the said Foster in the circuit court of the United States for the district of Massachusetts, and the writs of attachment therein were delivered for service to the defendant, who was then the marshal of the United States for the district aforesaid,

who, on the same days, by virtue of the said writs, attached certain property which was embraced in the said deed of assignment from the said Foster to the plaintiff, to recover the value of which, this action is brought. On the 15th day of August 1840, the said Foster applied to a master in chancery in the county of Middlesex, and was declared an insolvent debtor, and a warrant having issued, and a meeting of the creditors of the said Foster being held, the plaintiff was duly elected assignee of the goods and estate of the said Foster.

" The suits of the said Springer against the said Foster, were duly entered in court, and one of them having been terminated by a final judgment, the execution which issued thereon was levied on a part of the property attached, pursuant to the attachment. The other suit is still pending in court. . Upon the execution of the said assignment to said Carter by said Foster, the said Carter took possession of the property thereby assigned, the property attached by said Sibley being a part thereof, and the same was in the possession of the said Carter at the time of said attachment. And on the 30th of Nov. 1839, the said Carter gave to said Sibley notice in writing that he, said Carter, claimed the said property by virtue of said assignment, and demanded the same of said Sibley.

" If the court shall be of opinion that the plaintiff can maintain this action, upon the facts above set forth, then the case is to be put to a jury to assess the damages ; otherwise, the plaintiff is to be nonsuit."

*H. H. Fuller*, for the plaintiff.

*C. P. Curtis & B. R. Curtis*, for the defendant.

SHAW, C. J. This is an action of trespass, commenced on the 19th of March 1840, against the defendant, as marshal of the district of Massachusetts. The plaintiff claims title to the goods taken, as assignee of Benjamin Foster, jr. of Charlestown, under an assignment made to him, Nov. 8th 1839, pursuant to *St.* 1836, *c.* 238, entitled " an act to regulate the assignment and distribution of the property of insolvent debtors." The property was attached on mesne process by the defendant, as marshal of the United States, on the 19th of Nov 1839, at the suit of a citizen of another State.

It appears by the facts stated, that after the commencement of the present action, the said Foster made application to a master in chancery, for proceedings as an insolvent debtor, under the insolvent law of 1838, *c.* 163, pursuant to which the plaintiff was appointed assignee. But this proceeding, manifestly, can have no bearing upon the question, which must be decided upon the facts existing at the time the action was brought

It is plain that the issue, in this case, is upon the title of the plaintiff to the goods claimed ; and to maintain the action, he must establish his title as assignee under the first assignment. It is immaterial to the decision of this case, whether the defendant rightfully attached these goods or not; if the plaintiff had no title to them, he has no interest in that question.

The title of the plaintiff, derived from an assignment made in 1839, some time after the insolvent law of 1838 went into operation, depends upon the question whether the *St.* of 1836, *c.* 238, was in operation at that time, or whether it was not repealed by the *St.* of 1838, *c.* 163. The statute of 1836 is not repealed in terms. Whether it is by implication, is the question. The provision of *St.* 1838, *c.* 163, § 25, is this : " All the provisions of law, inconsistent with the provisions of this act, are hereby repealed, saving " &c.

The plaintiff claims the goods under a statute title, and unless the statute, under which he so claims, is in force, and all its terms are strictly pursued, the property does not pass. It was indeed intimated, in the course of the argument, that this assignment might be good to pass the property, as against the defendant, and the creditor in whose behalf he made the attachment, as a conveyance at common law. If in fact, it was made upon a good, valuable and adequate consideration, and by an instrument to which creditors having debts equal to, or exceeding the value of the property assigned, had become parties, or otherwise legally assented, it would have been a very different question. But from the terms in which it is described, we understand it to be an assignment to the plaintiff, in trust for creditors, and that the said Foster took the oath, and the assignee gave the notice, required by law. We therefore understand it to be

an assignment made in pursuance of *St.* 1836, *c.* 238, and relying upon that statute for its efficacy, and that it was not so made as to be a valid assignment at common law, as adopted and practised in this State ; so that if not made valid, by force of that statute, it was not available against an attaching creditor.

Upon the question of repeal, the court are of opinion that so far as the two statutes affect the same class of persons, the latter operates as a repeal of the former. The statute of 1838, so far as it provided for a voluntary insolvency, on the part of the debtor, by an assignment of his property for the benefit of his creditors, was limited in its application to the case of insolvent debtors, whose debts, in the aggregate, amounted to the sum of five hundred dollars.* The latter act, therefore, does not affect the former, in its application to persons whose debts in the aggregate do not amount to five hundred dollars.

But so far as the two statutes affect the same persons, the court are of opinion that it is impossible for both statutes to exist and operate together, so as to leave it at the option of the debtor, to act under the one or the other, at his election ; and therefore that it was the intention of the legislature, by the qualified terms of repeal contained in the latter, to repeal the former. They are two distinct systems, or series of measures, designed to ac complish substantially the same object, namely, the equal distribution of the property of an insolvent debtor, in such manner that all his creditors should participate equally in the fund, in proportion to the amount of the debts due to them. Each is designed to direct and require certain legal proceedings to be adopted, and, upon a compliance with them, to vest a title to all the property of the debtor in the assignees, by force of the act itself, for the benefit of all creditors, who may come in and prove their debts. Each does, to some extent, but with different limitations, restrain and prohibit the attachment of the debtor's property. Each is a system of insolvent laws. Each extends to the whole subject matter, upon which it acts, namely, the whole of the real and personal estate of the debtor ; so that the action of one necessarily suspends the opera-

---

* Reduced to two hundred dollars by *St.* 1841, *c.* 124, § 1.

tion of the other. And then as the insolvent law of 1838 was later in point of time ; as it is more thorough and com plete in its provisions ; as it leaves no option with the debtor to proceed upon the one or the other statute, as he may prefer, either in terms, or by implication ; as it is the last authentic declaration of the legislative will, on the same subject ; we think the latter, by the qualified clause of repeal, and by necessary implication, supersedes and annuls the former.

Without therefore going more into detail, the court are of opinion, that as Foster, the debtor, owed more than $ 500 in November 1839, when he made the assignment in question, he was at that time a proper subject for the operation of the insolvent law of 1838, and that the statute of 1836, in pursuance of which he made his assignment, and without the force of which it could not take effect, as against an after attachment, was repealed as to him, and therefore that the plaintiff, claiming under that assignment, cannot maintain this action.

*Plaintiff nonsuit.*